**NOT FOR CITATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH MCINERNEY, | No. C 09-00430 JSW |
| Plaintiff, | **ORDER GRANTING MOTION FOR SUMMARY JUDGMENT AND TO DISMISS UNSERVED DEFENDANTS** |
| v. | |
| CITY & COUNTY OF SAN FRANCISCO, et al., | |
| Defendants. | |

**INTRODUCTION**

Now before the Court for consideration is the motion for summary judgment and to dismiss unserved Defendants filed by Defendants City and County of San Francisco (the "City"), Sergeant R. Andrew Cox ("Sergeant Cox"), Officer Carla Spain ("Officer Spain"), and Wolfgang Stuwe ("Stuwe") (collectively "Defendants"). The motion also is brought on behalf of Officer Nicholas Buckley ("Officer Buckley") and Heather Fong,, who are named in the body of the Complaint but not in the caption, and who have not been served. (Def. Mot. at 7:3-10.)

The Court has considered the parties' papers, relevant legal authority, and the record in this case, and it finds the matter suitable for disposition without oral argument. *See* N.D. Civ. L.R. 7-1(b). The hearing set for August 6, 2010 is VACATED. For the reasons set forth in the remainder of this Order, Defendants' motion is GRANTED.

//

//

**BACKGROUND**

On January 21, 2009, Plaintiff, Joseph McInerney, filed his complaint alleging violations of 42 U.S.C. § 1983 against the moving Defendants. The City's liability is premised on *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978). McInerney's claims arise out an incident that occurred on January 14, 2008, at his former residence, the LeNain Hotel (the "LeNain"), a residential hotel located at 30 Eddy Street, in San Francisco, California.[1] (Declaration of Christine Van Aken ("Van Aken Decl"), Ex. A (Deposition of Joseph McInerney ("McInerney Depo.") at 9:18-10:12).) The LeNain is a residential hotel owned by the City and County of San Francisco and leased to a nonprofit corporation that rents rooms to low-income community members. (Compl. ¶ 11; Answer ¶ 11.) According to the record in this case, in order to gain entry to the LeNain, visitors must be buzzed in to the hotel. (McInerney Depo. at 81:11-19.)

On December 31, 2007, McInerney permanently vacated his room at the LeNain, pursuant to a settlement of an unlawful detainer action that the LeNain filed against him. (McInerney Depo. at 29:8-17, 30:3-21.) Before he left the LeNain, McInerney called the San Francisco Police Department ("SFPD"), because he believed that the SFPD and San Francisco City Attorney's office had caused a surveillance camera to be installed in his room. McInerney wanted to file a police report, but the SFPD officer who responded refused, which angered McInerney. (*Id.* at 31:17-32:17, 33:22-34:5, 37:6-19, 74:3-75:23.) Sean Hughes ("Hughes"), the LeNain's manager, believed that McInerney created a disturbance at the hotel during this incident. (*Id.* at 32:12-21, 41:20-42.1, 47:13-48:9.)

After he moved out of the LeNain, McInerney returned approximately every three days to pick up his mail. (*Id.* at 40:1-10.) On Saturday, January 12, 2008, McInerney attempted to pick up his mail but was informed that he would be permitted to pick up mail only on weekdays. (*Id.* at 40:15-41:14.) On Monday, January 14, 2008, McInerney returned to the LeNain, and Hughes called McInerney into his office. Hughes advised McInerney that he had

---

[1] McInerney also names as Defendants, The Tides Center and Dish, which he claims are independent contractors of the City that manage the LeNain, and Tides Center employee Doug Gary. These defendants have not been served. *See* Section C, *infra*.

2

"been 86ed" from the LeNain, because of the disturbance on December 31, 2007. (*Id.* at 41:20-42:1.) According to McInerney, "86ed" means that "a person is barred from entering the hotel because they are guilty of some kind of offense which warrants being blackballed." (*Id.* at 42:15-20.) Hughes then asked McInerney to leave, and McInerney advised Hughes that he planned to visit Patrick West, a resident, who was sitting in the lobby community room. (*Id.* at 44:8-20, 45:1-19.) Hughes responded by telling McInerney that if he refused to leave, Hughes would call the police. McInerney refused to leave, went to speak with Mr. West, and waited for the police to arrive. (*Id.* 45:16-48:13.) McInerney understood that Hughes was the person in charge of the LeNain that day, although he contests Hughes' authority to bar him from the LeNain's premises. (*Id.* at 48:3-9.)

Officer Spain and Officer Nicholas Buckley arrived at the LeNain, spoke with Hughes, and advised McInerney that Hughes had told them that Hughes did not want him on the premises. McInerney told the Officers that he had a legitimate reason for being at the LeNain. (*Id.* at 52:3-53:22.) Officer Buckley advised McInerney that if he refused to leave, they would arrest him. McInerney refused to leave on his own, but he offered to do so if the Officers issued him a citation and notice to appear. (*Id.* at 53:18-25, 56:2-23, 59:9-60:5.) Ultimately, Hughes filled out a citizens' arrest complaint against McInerney and accused him of trespassing. Officer Buckley handcuffed McInerney, and Officers Spain and Buckley took him into custody. (*Id.* at 56:25-57:3, 59:6-16, 61:4-62:3; *see also* San Francisco Police Department Narrative, attached as exhibit to Complaint.) McInerney admits that he was not injured when Officer Buckley handcuffed him but stated that the handcuffs were "pretty uncomfortable." (McInerney Depo. at 61:5-62:1.)

At McInerney's request, the Officers removed the handcuffs once they reached the police station. (*Id.* at 63:1-11.) The Officers subsequently transported him to the Hall of Justice, where he was cited for trespassing and released. When he appeared in court the next day, McInerney was informed the charges had been dismissed. (*Id.* at 66:18-68:14.) The Court shall address additional facts as necessary in the remainder of this Order.

//

//

**ANALYSIS**

**A.    Motion for Summary Judgment.**

    **1.    Legal Standards Applicable to Motions for Summary Judgment.**

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A fact is "material" if the fact may affect the outcome of the case. *Id.* at 248. "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997).

A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323-24 (1986). The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits which demonstrate the absence of a genuine issue of material fact. *Id.* at 323. Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Id.* Once the moving party meets this initial burden, the non-moving party must go beyond the pleadings and by its own evidence "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir. 1995)) (stating that it is not a district court's task to "scour the record in search of a genuine issue of triable fact"). If the non-moving party fails to make this showing, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

4

//

### 2. The Claim for Unlawful Arrest.

McInerney claims that the Defendants violated his Fourth Amendment rights when they arrested him. "A warrantless arrest of an individual in a public place for a crime committed in an officer's presence violates the Fourth Amendment if the arrest is not supported by probable cause." *Blankenhorn v. City of Orange*, 485 F.3d 463, 470-71 (9th Cir. 2007) (citing *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001)). Defendants Spain, Cox and Stuwe move for summary judgment on the basis that they are entitled to qualified immunity on this claim.[2]

Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The privilege is an immunity from suit rather than a mere defense to liability. *Id.* The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate any clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, __ U.S. __, 129 S. Ct. 808, 815 (2009).

Because qualified immunity is an affirmative defense, the burden of proof initially lies with the official asserting the defense. *Harlow*, 457 U.S. at 812. The Supreme Court has stated that a court called upon to rule on the issue of qualified immunity must ask the following threshold question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001) (citing *Siegert v. Gilley*, 500 U.S. 226, 232 (1991)). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id.*

---

[2] McInerney attests that Stuwe was attending a meeting at the LeNain and could have stopped the arrest if he had chosen to do so. (*Id.* at 74:24, 77:1-79:17.)

5

However, if the Court finds that the facts would show the violation of a constitutional right, the next inquiry is to determine "whether the right was clearly established." *Id.* Thus, a court "must determine whether the law governing the official's conduct was clearly established at the time the challenged conduct occurred." *Mendoza v. Block*, 27 F.3d 1357, 1360 (9th Cir. 1994) (citing *Hallstrom v. Garden City*, 991 F.2d 1473, 1482 (9th Cir. 1993)); *see also Blueford v. Prunty*, 108 F.3d 251, 255 (9th Cir. 1997) (holding that the issue whether an aspect of law was clearly established must be determined as of the time of the alleged conduct at issue). The Supreme Court in *Pearson, supra*, determined that the specific order of the qualified immunity inquiry is not required and held that "judges of the district court and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." 129 S. Ct. at 818.

### a. The Officers Had Probable Cause to Arrest McInerney.

This Court begins by examining whether the facts demonstrate that Defendants' violated McInerney's Fourth Amendment rights, and it concludes they did not. McInerney argues that the Defendants did not have probable cause to arrest him. In order to resolve that question, the Court considers "whether at that moment the facts and circumstances within [Defendants'] knowledge ... were sufficient to warrant a prudent man in believing that [McInerney] had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91 (1964). As the Ninth Circuit reiterated recently, "'mere suspicion, common rumor, or even strong reason to suspect are not enough'" to establish probable cause. *Edgerly v. City and County of San Francisco*, 599 F.3d 946, 954 (9th Cir. 2010) (quoting *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007)).

McInerney was arrested for trespassing in violation of California Penal Code § 602(o), which provides, *inter alia*, that it is a misdemeanor to willfully refuse or fail:

> to leave land, real property, or structures belonging to or lawfully occupied by another and not open to the general public, upon being requested to leave by (1) a peace officer at the request of the owner, the owner's agent, or the person in lawful possession, and upon being informed by the peace officer that he or she is acting at the request of the owner, the owner's agent, or the person in lawful possession, or (2) the owner, the owner's agent, or the

6

person in lawful possession. The owner, the owner's agent, or the person in lawful possession shall make a separate request to the peace officer on each occasion when the peace officer's assistance in dealing with a trespass is requested. ... For purposes of this section, land, real property, or structures owned or operated by any housing authority for tenants as defined under Section 34213.5 of the Health and Safety Code constitutes property not open to the general public; however, this subdivision shall not apply to persons on the premises who are engaging in activities protected by the California or United States Constitution, or to persons who are on the premises at the request of a resident or management and who are not loitering or otherwise suspected of violating or actually violating any law or ordinance.

The Court finds the *Blankenhorn* case, *supra*, to be instructive. In that case, the plaintiff was issued a notice forbidding him access to a shopping mall. *Blakenhorn*, 485 F.3d at 467-468. Some months later, the defendant officers saw him at the mall and stopped him in order to determine whether mall management wanted him removed. *Id.* at 468. The plaintiff ultimately was arrested and charged with trespassing. On appeal, the court rejected plaintiffs argument that the officers did not have probable cause to arrest him. *Id.* at 472-73. In reaching this conclusion, the court noted that the plaintiff had received a notice that he was forbidden to enter the mall and knew of this notice, the officers also knew or thought he had been banned from the premises, and a security guard issued a written citizen's arrest form and stated that the plaintiff was trespassing and asked that he be taken into custody. *Id.* On those facts, the court concluded that a reasonable officer could have believed that the plaintiff violated either California Penal Code § 602(j) or § 602(n).[3] *Id.* at 473-75.

Similarly, here, at the time the Officers arrested McInerney, Hughes had asked him to leave the LeNain's premises, McInerney had refused, and the Officers were aware of that fact. Hughes completed a citizen's arrest form and stated that McInerney was trespassing. Although McInerney argues that Hughes was not the "owner" of the LeNain, he presents no evidence to suggest that Hughes lacked authority as the owner's agent to bar him from the LeNain. Moreover, he acknowledges that Hughes was the person in charge of the LeNain that day. In addition, McInerney presents no evidence to demonstrate that the LeNain was open to the general public, and the record demonstrates that one must be buzzed in to gain entry to the

---

[3] These provisions of Section 602, have been re-designated as subsections 602(k) and 602(o), respectively.

7

LeNain. Taking these facts in the light most favorable to McInerney, the Court concludes that a reasonable officer could have believed McInerney violated § 602(o) and, thus, had probable cause to arrest him. The Court further concludes that Officer Cox did not violate McInerney's constitutional rights when he approved booking McInerney on those charges.

Accordingly, the Defendants are entitled to qualified immunity on this claim, and their motion for summary judgment is granted, in part, on this basis.

### 2. The Excessive Force Claim.

The Defendants also move for summary judgment on McInerney's excessive force claim. McInerney's claim for excessive force is premised on the allegation that Officer Buckley "strong armed" him and handcuffed him. (Compl. ¶¶ 1, 9; McInerney Depo. at 61:4-62:25.) It is clearly established that the use of excessive force by police officers in an arrest violates an arrestee's Fourth Amendment right to be free from unreasonable seizure. *White v. Pierce County*, 797 F.2d 812, 816 (9th Cir. 1986). Whether an officer's conduct was reasonable is an objective one asking "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989).

The Court must consider whether the totality of the circumstances justifies the force used, examining particularly severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. *Id.* at 396 (citing *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985)). "The 'reasonableness' of the particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* (citing *Terry v. Ohio*, 392 U.S. at 20-22). When determining whether the amount of force used was reasonable, the Court must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Johnson v. County of Los Angeles*, 340 F.3d 787, 792 (9th Cir. 2003) (citing *Graham*, 490 U.S. at 396).

8

According to McInerney's testimony, "[Officer] Buckley ... applied the handcuffs on me, on my back. And then he tried to strongarm me. ... [Officer Buckley] grabbed me by the hand – by the arm, the left arm forcibly. ... I told him not to – not to do that or not to use force because I wasn't resisting arrest. ... He stopped and took his hand off me." (McInerney Depo. at 61:5-18.) Although the arrest was for a minor offense, and although he may not have been resisting the Officers, McInerney admits that he was not injured when Officer Buckley grabbed his arm or by the handcuffs." (*Id.* at 61:19-25.) Moreover, the factual record does not suggest that the Officers arrested McInerney in an "'extraordinary manner, unusually harmful to [his] privacy or ... physical interests.'" *Atwater*, 532 U.S. at 354 (quoting *Wren v. United States*, 517 U.S. 806, 818 (1996)). McInerney may have been "uncomfortable" in the handcuffs and during the ride to the station, none of the facts presented take McInerney's arrest outside the realm of a normal, custodial arrest. *See id.* at 354-55 (holding that the circumstances surrounding plaintiff's arrest, including the use of handcuffs, while "inconvenient and embarrassing" were not "so extraordinary as to violate the Fourth Amendment").

Accordingly, the Court concludes that, taking the facts in the light most favorable to McInerney, no reasonable juror could conclude that the Officers used excessive force to effectuate the arrest. Defendants' motion for summary judgment is granted, in part, on this basis.

**B.     The City Is Entitled to Summary Judgment.**

The City can be held liable only for injuries that arise from an official policy or custom. *Monell*, 436 U.S. at 694. As the party with the burden of proof on this claim, McInerney must show "(1) that he possessed a constitutional right of which he was deprived; (2) that the [City] had a policy; (3) that the policy 'amounts to deliberate indifference' to [McInerney's] constitutional right; and (4) that the policy is the 'moving force behind the constitutional violation.'" *Anderson v. Warner*, 451 F.3d 1063, 1070 (9th Cir. 2006) (quoting *Oviatt v. Pearce,* 954 F.2d 1470, 1474 (9th Cir.1992) (in turn quoting *City of Canton v. Harris*, 489 U.S. 378, 389-91 (1989)). "There also must be a 'direct causal link' between the policy or custom and the injury," and McInerney "must be able to demonstrate that the injury resulted from a

9

'permanent and well settled practice.'" (*Id.* (quoting *McDade v. West*, 223 F.3d 1135, 1141 (9th Cir. 2000) (internal quotations omitted)). A municipality may not be held liable under Section 1983 where no injury or constitutional violation has occurred. *Jackson v. City of Bremerton*, 268 F.3d 646, 653 (9th Cir. 2001).

Because the Court has concluded that McInerney's arrest was supported by probable cause and that the Officers did not use excessive force, he has failed to establish that he was deprived of any constitutional rights. Moreover, McInerney failed to present any evidence to support his claim that the City has a "a custom or policy of making unlawful custodial arrests." (*See* Compl. at 2:5-7.) Similarly, with respect to his separate claim that the City has a policy of harassing McInerney in retaliation for McInerney's exercise of his "First Amendment rights to seek by petition for a redress of grievances," McInerney presents no competent evidence to support this claim.

Accordingly, the City's motion for summary judgment is granted, in part, on this basis as well.

**C.    The Motion to Dismiss the Unserved Defendants is Granted.**

Federal Rule of Civil Procedure 4(m) ("Rule 4(m)") provides that service must be effected within 120 days after filing of the complaint. If service of the summons and complaint is not made upon a defendant within 120 days, the Court "must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m). "At a minimum, 'good cause' means excusable neglect." *Boudette v. Barnette*, 923 F.2d 754, 756 (9th Cir. 1990). Attorney inadvertence does not qualify as good cause. *Wei v. State of Hawaii*, 763 F.2d 370, 372 (9th Cir. 1985). "The rule is intended to force parties and their attorneys to be diligent in prosecuting their causes of action." *Id*.

McInerney filed his complaint on January 21, 2009, with an application to proceed *in forma pauperis*. (Docket Nos. 1, 3.) The Court granted the application to proceed *in forma pauperis*, and it ordered that the United States Marshal serve the summons and complaint on the

10

Defendants. (Docket No. 12.) The City, Sergeant Cox, and Officer Spain were served July 7 and July 8, 2009. (Docket Nos. 15-18.) The Clerk sent McInerney a letter requesting the contact information for the Tides Center, Dish, Hughes, Gary, and Stuwe. (Docket No. 14.) There is nothing in the record that shows McInerney responded to that letter, and these defendants have not been served.[4]

McInerney has not sought an extension of time to serve the Defendants. In opposition to the motion for summary judgment, he failed to address this argument, although he asserts that he has not conducted discovery because the City "has conducted a calculated plan of harassment intended to cause and did cause plaintiff a severe acute post-traumatic stress disorder." (Declaration of Joseph McInerney in Support of Opposition to Motion for Summary Judgment ("McInerney Decl."), ¶ 2.) The allegations of harassment, however, also form the basis of one aspect of McInerney's Complaint against the City. (Compl. ¶ 16.) Having failed to provide the Court with good cause to extend the time for service, Defendant's alternative motion to dismiss all claims against The Tides Center, Sean Hughes, Dish, and Doug Gary, is granted in part on this basis. The claims against these defendants are dismissed without prejudice.

**C.   State Law Claims.**

In the caption of his Complaint, McInerney also refers to state law claims, which are described in more detail in a claim form attached to the Complaint. Although it is not clear whether McInerney has properly alleged these claims, to the extent they are alleged in the Complaint, jurisdiction over these claims would arise under 28 U.S.C. § 1367. A district court may decline to exercise supplemental jurisdiction in a case arising from a common nucleus of operative fact where, inter alia, it has dismissed the federal claims. 28 U.S.C. § 1367(c)(3). In order to make this determination, courts should consider factors such as "economy,

---

[4]   Although Officer Buckley and Heather Fong were not named in the caption and have not been served, and although Stuwe has not been served, for the reasons set forth in Section A, the Court concludes that all claims against them should be dismissed with prejudice.

11

convenience, fairness, and comity." *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) (internal quotations and citations omitted).

When "federal-law claims are eliminated before trial, the balance of factors to be considered ... will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988), *superseded by statute*, 28 U.S.C. § 1447(c). In light of the Court's ruling on the Section 1983 claims, and to the extent they have been included properly in the Complaint, the Court declines to exercise supplemental jurisdiction over McInerney's remaining claims, and they are dismissed without prejudice.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is granted, and their alternative motion to dismiss the unserved defendants is granted in part. To the extent McInerney asserts state law claims, they are dismissed without prejudice. A separate judgment shall enter, and the Clerk is directed to close the file.

**IT IS SO ORDERED.**

Dated: July 20, 2010

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

JOSEPH MCINERNEY,

    Plaintiff,

v.

SF CITY & COUNTY et al,

    Defendant.
                                    /

Case Number: CV09-00430 JSW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on July 20, 2010, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Joseph McInerney
P.O. Box 2625
San Jose, CA 95113

Dated: July 20, 2010

*Jennifer Ottolini*
Richard W. Wieking, Clerk
By: Jennifer Ottolini, Deputy Clerk

13